**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Calvin Wayne BUCKLAND, Defendant–Appellant.**

No. 99–30285.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc Sept. 26, 2001

Filed Jan. 18, 2002

Amended May 7, 2002

Zenon P. Olbertz, Law Office of Zenon Peter Olbertz, Tacoma, WA, for the defendant-appellant.

J. Douglas Wilson, United States Attorney's Office, San Francisco, CA, for the plaintiff-appellee.

Arlen Storm, United States Attorney's Office, Seattle, WA, for the plaintiff-appellee.

Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, CA, amici curiae in support of the defendant-appellant.

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, CA, amici curiae in support of the defendant-appellant.

Before: SCHROEDER, Chief Judge, HUG, REINHARDT, O'SCANNLAIN, TROTT, T.G. NELSON, KLEINFELD, TASHIMA, GOULD, PAEZ, and TALLMAN, Circuit Judges.

Opinion by Judge TROTT; Partial Concurrence and Partial Dissent by Judge HUG; Dissent by Judge TASHIMA.

**ORDER**

The mandate issued February 11, 2002 is hereby recalled for the purpose of amending the opinion. The Opinion filed January 18, 2002, and located at 277 F.3d 1173 is amended as follows:

Page 1184 in section "**B. § 5G1.2(d) STACKING**" which reads in the second to the last sentence in the first paragraph, "However, the district court determined under U.S.S.G. § 2D1.1(a)(3) that his sentence should be 324 months based on a combined offense level of 36 and a Guideline range of 320 to 405 months.", is amended to read:

> However, the district court determined under U.S.S.G. § 2D1.1(a)(3) that his sentence should be 324 months based on a combined offense level of 36 and a Guideline range of 324 to 405 months.

The mandate shall issue forthwith.

## OPINION

TROTT, Circuit Judge, with whom SCHROEDER, Chief Judge, O'SCANNLAIN, KLEINFELD, RONALD M. GOULD, and RICHARD C. TALLMAN, Circuit Judges, join. Circuit Judge T.G. NELSON joins except for Part IV B.

On June 26, 2000, the Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Calvin Buckland asks us to conclude that this holding renders facially unconstitutional 21 U.S.C. § 841(b)(1)(A), (B), the laws which provide in certain controlled substance cases for sentences beyond the basic 20 year maximum imposed by § 841(b)(1)(C) for default cases where quantity is not a sentence-determining factor. In the alternative, Buckland argues that his individualized sentence examined in the light of *Apprendi* constituted plain error, and urges that we vacate and remand for resentencing. As have our sister circuits before us,[1] we hold that § 841 is not facially unconstitutional; and we conclude that the *Apprendi* error with respect to Buckland's sentence did not affect his substantial rights. Thus, we affirm his sentence of 27 years.

## I

In 1994, Buckland was indicted on one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, three counts of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and three counts of using a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The government alleged the involvement in the conspiracy of "one thousand (1000) grams or more of a mixture or substance containing a detectable amount of methamphetamine," which, if properly proved, carries a possible life sentence. As was customary, however, the jury was not instructed that it had to determine any particular amount of methamphetamine in order to convict Buckland. The jury convicted Buckland on all seven counts, and the presentence report concluded that his maximum term of imprisonment based on §§ 846, 841(b)(1)(A) was life. Using the preponderance of the evidence standard,

---

1. *See United States v. Vigneau*, 2 Fed.Appx. 53, 54 (1st Cir.2001) (unpublished); *United States v. Kelly*, 272 F.3d 622, 623 (3rd Cir. 2001) (per curiam); *United States v. McAllister*, 272 F.3d 228, 232 (4th Cir.2001); *United States v. Slaughter*, 238 F.3d 580, 581 (5th Cir.2000), *cert. denied*, 532 U.S. 1045, 121 S.Ct. 2015, 149 L.Ed.2d 1015 (2001); *United States v. Martinez*, 253 F.3d 251, 256 n. 6 (6th Cir.2001); *United States v. Brough*, 243 F.3d 1078, 1080 (7th Cir.), *cert. denied*, — U.S. ——, 122 S.Ct. 203, 151 L.Ed.2d 144 (2001); *United States v. Woods*, 270 F.3d 728, 729 (8th Cir.2001); *United States v. Cernobyl*, 255 F.3d 1215, 1216 (10th Cir.2001); *United States v. Candelario*, 240 F.3d 1300, 1311 n. 16 (11th Cir.), *cert. denied*, 533 U.S. 922, 121 S.Ct. 2535, 150 L.Ed.2d 705 (2001).

the district court determined at sentencing that the gross amount of drugs for which Buckland was responsible was almost eight kilograms and sentenced him to 824 months in prison. On appeal, we affirmed the conspiracy and drug convictions, vacated the firearm convictions under *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and remanded for resentencing. *United States v. Buckland,* No. 95–30147, 1996 WL 632958, 1996 U.S.App. LEXIS 28237 (9th Cir. Oct. 28, 1996) (unpublished).

On remand, Buckland attempted to raise a number of sentencing objections, including whether the district court relied on an inaccurate estimate of the drug quantity in establishing his base offense level. Buckland's objections notwithstanding, the district court limited its consideration to a firearm enhancement issue, and resentenced Buckland to 360 months. Buckland again appealed, and we held that the district court erred in failing to consider all of Buckland's sentencing objections. We, again, vacated his sentence and remanded for resentencing. *United States v. Buckland,* Nos. 97–30204, 97–35687, 1998 WL 514852, 1998 U.S.App. LEXIS 20243 (9th Cir. Aug.14, 1998) (unpublished). On the second remand, the district court considered Buckland's objections and sentenced him to 324 months.

In this appeal, Buckland originally advanced several contentions: (1) the district court's findings on the type and quantity of methamphetamine were erroneous; (2) the district court erred in failing to decrease his sentence for acceptance of responsibility; and (3) his trial counsel rendered ineffective assistance. In his supplemental briefs, Buckland argues that *Apprendi* renders 21 U.S.C. § 841(b) facially unconstitutional and his sentence invalid.

The government forthrightly acknowledges with the benefit of hindsight that the district court erred twice, first, by failing to submit the drug quantity determination to the jury for a finding beyond a reasonable doubt and, then, by imposing a unitary sentence—27 years—in excess of § 841(b)(1)(C)'s 20 year maximum for any unspecified amount of methamphetamine. The government disagrees, however, that *Apprendi* makes § 841 unconstitutional, contending also that these sentencing errors were not prejudicial and, thus, do not require us to vacate and remand.

## II

### STANDARD OF REVIEW

Buckland's case comes before us on direct review, thus entitling him to the benefit of *Apprendi* 's new rule. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *United States v. Nordby,* 225 F.3d 1053, 1059 (9th Cir.2000). We review only for plain error, however, because Buckland did not object to the district court's use of the preponderance of the evidence standard in determining the amount of methamphetamine. Fed.R.Crim.P. 52(b); *Johnson v. United States,* 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Under the plain error standard, Buckland must establish an error, that was plain, and that affected his substantial rights. *See Johnson,* 520 U.S. at 467, 117 S.Ct. 1544. If Buckland makes this showing, we may exercise our discretion to correct the error only if we conclude that it " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

## III

### DISCUSSION

Buckland contends that § 841 is facially unconstitutional. Congress, he ar-

gues, intended without formally saying so that drug quantity be determined by a judge by a preponderance of the evidence, rather than by a jury beyond a reasonable doubt. It follows, he submits, that because such an approach to sentencing has been rendered unconstitutional by *Apprendi, see Nordby,* 225 F.3d at 1059, those parts of the statute under which he was sentenced must fail. In support of his argument, Buckland correctly points out that before *Apprendi* virtually everyone routinely treated drug quantity under § 841 as a "sentencing factor" that need not be found beyond a reasonable doubt by a properly instructed jury. Indeed, every circuit which considered the question including our own, so held.[2]

The government maintains that this pre-*Apprendi* view reflects Congress's intent in enacting the federal drug statutes. The government urges us, however, to "sever" Congress's alleged intent from the statute and to fill the resulting void with the new procedure mandated by *Apprendi.* Although we hold that § 841 is not unconstitutional in this respect, we respectfully suggest that the government's severance "solution" is as errant as Buckland's attack. To explain, we resort to basic principles of statutory construction.

■■■■■ The Supreme Court instructs us that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. California,* 155 U.S. 648, 657, 15 S.Ct. 207, 39

L.Ed. 297 (1895); *see also Miller v. French,* 530 U.S. 327, 336, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (counseling courts to avoid "constitutionally doubtful constructions"). Thus, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2279, 150 L.Ed.2d 347 (2001) (quoting *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)). This obligation does not give us the unfettered prerogative to rewrite a statute in order to save it or to "ignore the legislative will" behind it. *Miller,* 530 U.S. at 341, 120 S.Ct. 2246. Rather, "[w]here Congress has made its intent clear, we must give effect to that intent." *Id.* at 336, 120 S.Ct. 2246 (quoting *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 215, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962)).

■■■■■ " '[T]he starting point for interpreting a statute is the language of the statute itself.' " *Hallstrom v. Tillamook County,* 493 U.S. 20, 25, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be

---

**2.** *See, e.g., United States v. Lindia,* 82 F.3d 1154, 1160 (1st Cir.1996); *United States v. Reyes,* 13 F.3d 638, 640 (2d Cir.1994); *United States v. Lewis,* 113 F.3d 487, 490 (3rd Cir.1997); *United States v. Dorlouis,* 107 F.3d 248, 252 (4th Cir.1997); *United States v. Cisneros,* 112 F.3d 1272, 1282 (5th Cir.1997); *United States v. Caldwell,* 176 F.3d 898, 900 (6th Cir.), *cert. denied,* 528 U.S. 917, 120 S.Ct. 275, 145 L.Ed.2d 230 (1999); *United States v. Jackson,* 207 F.3d 910, 920 (7th Cir.), *cert. granted in part, judgment vacated by* 531 U.S.

953, 121 S.Ct. 376, 148 L.Ed.2d 290 (2000); *United States v. Buford,* 108 F.3d 151, 154 (8th Cir.1997); *United States v. Brinton,* 139 F.3d 718, 722 (9th Cir.1998); *United States v. Silvers,* 84 F.3d 1317, 1320 (10th Cir.1996); *United States v. Hester,* 199 F.3d 1287, 1293 (11th Cir.), *cert. granted, judgment vacated by* 531 U.S. 941, 121 S.Ct. 336, 148 L.Ed.2d 270 (2000); *United States v. Williams,* 194 F.3d 100, 102 (D.C.Cir.1999), *cert. denied,* 531 U.S. 1178, 121 S.Ct. 1156, 148 L.Ed.2d 1017 (2001).

regarded as conclusive." *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (citations and internal quotation marks omitted). Where the language is not dispositive, we look to the congressional intent "revealed in the history and purposes of the statutory scheme." *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990). With this guidance in mind, we look first and foremost to the text of § 841.

Section 841 is most striking for what it does not say. The statute does not specify who shall determine drug quantity or identify the appropriate burden of proof for these determinations. The Seventh Circuit observed as much in *Brough:*

> [T]he statute does not say who makes the findings or which party bears what burden of persuasion. Instead, the law attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden. It makes no constitutional difference whether a single subsection covers both elements and penalties, whether they are divided across multiple subsections (as § 841 does), or whether they are scattered across multiple statutes (see 18 U.S.C. §§ 924(a), 1963).

243 F.3d at 1079.

In *Apprendi,* on the other hand, the New Jersey statute under examination explicitly provided for a hate crime sentencing enhancement to be imposed based upon a finding of the trial court by a preponderance of the evidence. *See* 530 U.S. at 468, 120 S.Ct. 2348. This material difference, we believe, distinguishes Buckland's case.

The Tenth Circuit has essentially adopted the Seventh Circuit's view of this federal statutory scheme, saying, "[s]ection 841(b) itself is silent on the question of what procedures courts are to use in implementing its provisions, and therefore the rule in *Apprendi* in no way conflicts with the explicit terms of the statute." *Cernobyl,* 255 F.3d at 1219. The Tenth Circuit correctly noted that "*Apprendi* . . . does not hold that legislatures can no longer have separate statutory provisions 6655 governing a substantive offense and sentencing factors, as is the case in § 841." *Id.*

■ Although the text of the statute is dispositive, Buckland directs our attention also to the headings that appear in the statute, contending that they support his reading of it. We respectfully disagree. We note that the headings "Unlawful Acts" and "Penalties" that appear in the United States Code were not part of the legislation enacted by Congress. *Compare* Comprehensive Drug Abuse and Prevention and Control Act of 1970, Pub.L. No. 91–513, § 401, 84 Stat. 1260 *with* 21 U.S.C. § 841(a), (b). These headings were inserted as margin notes by the Office of the Federal Register, National Archives and Records Services, and became subsection headings when the Controlled Substances Act of 1970 was transposed into the United States Code. Congress has amended § 841 numerous times since, but has never opted to enact these headings into law. Thus, as in *Jones v. United States,* 526 U.S. 227, 233, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the "look" of this statute is not a reliable guide to congressional intentions.

■ Buckland's emphasis on the statutory divide between "elements" in § 841(a) and "penalties" or "sentencing factors" in § 841(b) is similarly unavailing. He reasons that Congress committed the finding of elements to a jury and the finding of sentencing factors to a judge. Yet, this conceptual pigeon-holing simply interferes with the language of the statute itself, effectively supplementing the statute with

provisions that appear nowhere in print. We find such labeling in this context not only inappropriate, but misleading. *See Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348 (describing the distinction between elements of the offense and sentencing factors as "constitutionally novel and elusive"); *but see Almendarez–Torres v. United States,* 523 U.S. 224, 226, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (attaching relevance to the characterization of a statute's provision as either an element of the offense or a sentencing factor). Indeed, as far back as 1984 our Circuit recognized that a "penalty enhancement provision" which is not an element of the crime charged, specifically 21 U.S.C. § 841(b)(6), can be included in an indictment and submitted to a jury for a decision as to the existence of the facts that make the enhancement applicable at sentencing. As Judge Hug correctly observed: "[Section 841(b)(6), which provides for increased punishment for quantities of marijuana exceeding 1,000 pounds] is clearly labeled a 'penalty' provision, as distinguished from the 'unlawful acts' prohibited by Section 841(a) [making unlawful possession with the intent to distribute]." *United States v. Wright,* 742 F.2d 1215, 1220 (9th Cir.1984). As Judge Tashima correctly noted in his opinion for the panel, now withdrawn, *see United States v. Buckland,* 259 F.3d 1157, 1167 (9th Cir.), *vacated by* 265 F.3d 1085 (9th Cir.2001), *Apprendi* eschews the distinction between sentencing factors and elements of a crime: "the relevant inquiry is one not of form, *but of effect*—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348 (emphasis added). Our sister circuits agree: "*Apprendi* compels us to submit to a jury questions of fact that may increase a defendant's exposure to penalties, regardless of whether that fact is labeled an element

or a sentencing factor." *Cernobyl,* 255 F.3d at 1219; *Brough,* 243 F.3d at 1080. The days of semantical hair splitting between "elements of the offense" and "sentencing factors," *see, e.g., Arreguin v. Prunty,* 208 F.3d 835, 838 (9th Cir.2000) ("[T]he crucial question is whether the special circumstance at issue here constitutes an element of the crime or a sentencing factor."), are over. To the extent that our case law holds to the contrary, it is overruled.

We find support for today's decision in *United States v. Evans,* 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948), a case relied on by Buckland's amici curiae. In that case, as here, both parties agreed that Congress sought an objective—punishing those who concealed or harbored unauthorized aliens—which did not appear in the text of the statute. *See* 8 U.S.C. § 144. Nevertheless, the Supreme Court declined to construe the statute to include that missing objective because it was uncertain how Congress would have drafted the relevant provisions. The Court reasoned:

> To [plug the alleged hole in the statute] would be to go very far indeed, upon the sheer wording of the section. For it would mean in effect that we would add to the concluding clause the words which the government's reading inserts.... It is possible that Congress may have intended this, but for more than one reason, we cannot be sure of that fact.

*Evans,* 333 U.S. at 488, 68 S.Ct. 634. Similarly, Buckland asks us to add a distinctive feature to this statute that not only does not appear in it, but, as far as we can tell, also was never debated or discussed in Congress. As did the Court in *Evans,* we decline this invitation. Congress simply did not purposefully " 'remove from the jury the assessment of the facts [necessary to] increase the prescribed range of penalties to which a criminal defendant is ex-

posed.' " *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (quoting *Jones v. United States*, 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)). It is, indeed, too tall an order for Buckland to mount a facial challenge to § 841 by first asking us to change the face he purports to attack. This recommended exercise in plastic surgery invites us to engage in a through-the-looking-glass search lured by the grin of an elusive cat, an adventure which would, indeed, be curious.

We believe that the Tenth Circuit was correct when it said that at the heart of Cernobyl's—and now Buckland's—argument for unconstitutionality is an assumption that we are bound by our pre-*Apprendi* holdings that these statutes commit determination of drug quantity to a judge for a finding under the preponderance standard. *See Cernobyl*, 255 F.3d at 1216. However, *Apprendi*'s reading of the Due Process Clause has stripped these holdings of precedential value. The simple fact is that it has been the judiciary, not Congress, which allocated the responsibility for determining drug quantity under § 841 to the courts. However, the most important court in this process—the Supreme Court—has, up until now, remained silent. Congress and courts may have understood or accepted that, as a matter of procedure, drug quantity could be decided by a judge, not a jury. Such an understanding, however, does not represent the same kind of pellucid legislative purpose and intent found in the New Jersey statute struck down in *Apprendi*. Moreover, Buckland fails to identify any persuasive legislative history that shows Congress clearly intended the procedure he now attacks as unconstitutional. Thus, because our reading of the statute is "fairly possible," we are obliged to so construe it.

We dispose of the government's severance argument more easily. A severance issue arises only when we confront " 'an act of Congress contain[ing] unobjectionable provisions separable from those found to be unconstitutional.' " *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (plurality) (citation and internal quotation marks omitted)). "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam) (citations and internal quotation marks omitted)).

Section 841 does not present a severance issue because Congress did not unconstitutionally commit determination of drug quantity to a judge for a finding by a preponderance of the evidence. As discussed earlier, that commitment was made by the judiciary, not the legislature. In short, there is nothing to sever from the statute. The government's position is, therefore, without merit.

We acknowledge the tension between our position here and that expressed in *Nordby*. There, we reviewed the defendant's conviction under 21 U.S.C. §§ 841, 846 for various marijuana-related offenses. The district court instructed the jury to convict "as long as the government proves beyond a reasonable doubt that defendants manufactured a measurable or detectable amount of marijuana." *Nordby*, 225 F.3d at 1056. At sentencing, the judge found Nordby responsible for 1000 or more plants, thus exposing him to a prison term of ten years to life under § 841(b)(1)(A)(vii). Because the jury de-

termined only that Nordby harvested a "measurable or detectable" amount of marijuana—triggering a maximum sentence of five years under § 841(b)(1)(D)— the judge's determination by a preponderance of the evidence increased Nordby's maximum sentence from five years to life. Indeed, the court actually sentenced him to ten years, five more than the jury's findings supported.

Applying *Apprendi*, the panel found plain error and remanded for resentencing. In reaching that decision, the panel held that Congress "clearly intended drug quantity to be a sentencing factor, not an element of the crime under § 841; the statute is not susceptible to a contrary interpretation." *Id.* at 1058. *Nordby* used the "sentencing factor" label as a basis for concluding that Congress committed quantity to the sentencing judge for a finding by a preponderance of the evidence. To the extent that *Nordby* is inconsistent with this opinion, it is overruled.

■ Our aim remains to give effect to Congress's intent. That intent is apparent: to ramp up the punishment for controlled substance offenders based on the type and amount of illegal substance involved in the crime. We honor the intent of Congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt. *See generally United States v. Harris*, 243 F.3d 806 (4th Cir.), *cert. granted,* —— U.S. ——, 122 S.Ct. 663, 151 L.Ed.2d 578 (2001) (granting review on whether "brandishing" of a firearm as used in 18 U.S.C. § 924(c)(1)(A) must be alleged in the indictment and proved beyond a reasonable doubt).

## IV

## PLAIN ERROR

■ The government concedes that Buckland's sentence constituted error; after *Apprendi*, a judge's determination of drug quantity which increases the maximum sentence to which the defendant is exposed under the crime of conviction is "clear" and "obvious" error. *Johnson,* 520 U.S. at 467–68, 117 S.Ct. 1544 ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration.") (quoting Fed.R.Crim.P. 52(b)). The government argues, nevertheless, that we should not vacate and remand because this error did not "affect substantial rights." *Id.* at 468, 117 S.Ct. 1544. In other words, the sentencing judge's determination did not prejudice Buckland in a manner that " 'affected the outcome of the ... proceedings.' " *United States v. Olano,* 62 F.3d 1180, 1188 (9th Cir.1995) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

The government's first argument of two tendered is that the uncontested evidence proves beyond a reasonable doubt that Buckland trafficked in an amount of methamphetamine far in excess of that needed to trigger the statutory maximum sentence of life imprisonment under § 841(b)(1)(A). Under that section, a person who commits an unlawful act involving "50 grams or more of methamphetamine ... or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine ... shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A)(viii). Thus, maintains the government, the judge's determi-

nation of a quantity of approximately eight kilograms without submitting the issue to the jury did not substantially affect the outcome of the proceedings. The government also notes that one need not even consider the disputed testimony of his accomplices in making this decision because the amount of methamphetamine seized by law enforcement officers from Buckland himself exceeded the 500 gram threshold for a mixture or substance containing a detectable amount of the drug.

The government's second argument is that the mandatory consecutive sentencing provisions of U.S.S.G. § 5G1.2(d) would result in a 324 month sentence even if Buckland had been charged only under § 841(b)(1)(C), which carries a per count maximum sentence of 20 years (240 months). For this proposition, the government relies on our recent decision in *United States v. Kentz*, 251 F.3d 835, 842 (9th Cir.2001), *petition for cert. filed* Nov. 05, 2001 (No. 01–7238). We agree with the government's basic contentions.

## A.

## RELIABLE EVIDENCE OF QUANTITY

Buckland was arrested on three separate occasions: December 7, 1993; February 16, 1994; and February 24, 1994. Each occasion became the basis of a possession with intent to distribute count in the indictment and the core of the conspiracy allegation. The jury convicted him as charged. The Presentence Report, unchallenged in this respect, reflects that on December 7, 1993, he had in his possession 449 grams of methamphetamine, on February 16, 1994, he had 200 grams, and on February 24, 1994, an additional 100

grams. The total of these amounts alone-over 700 grams-exceeds the 500 gram trigger that produces a statutory maximum of life.[3] Not only did Buckland fail to register an objection to these amounts, but in his formal "Objections to the Presentence Report and Government's Sentencing Memorandum" dated April 29, 1999, and prepared for Buckland's third sentencing hearing, his counsel Mr. Obertz wrote, "Even assuming appropriate composition [of the various amounts claimed by his accomplices], the defendant asserts the appropriate guidelines calculation would be level 32 i.e. *1–3 kilograms* of methamphetamine." (emphasis added). Furthermore, the district court asked Buckland's attorneys at the beginning of *each* of the three sentencing hearings if they wanted an evidentiary hearing, and each time the response was in the negative.

As we said in *United States v. Romero–Rendon*, "[t]he Sentencing Guidelines allow judges to rely at sentencing on any information … so long as it has sufficient indicia of reliability to support its probable accuracy." 220 F.3d 1159, 1161–62 (9th Cir.), *cert. denied*, 531 U.S. 1043, 121 S.Ct. 640, 148 L.Ed.2d 546 (2000) (citation and internal quotation marks omitted). We find such reliable indicia in this record. One kilogram of methamphetamine, of course, equals 1000 grams, twice the amount required under § 841(b)(1)(A)(viii) to make Buckland eligible for a life sentence.

Thus, whether we look only at the unchallenged amount of methamphetamine taken from Buckland by the authorities, or only at the amount conceded by his attorney with respect to the testimony of the accomplice witnesses, it appears beyond all

---

**3.** The government's Sentencing Memorandum fixes the amount at 749 grams, also in excess of the 500 gram threshold. The smallest amount anywhere in the record is 565.4 grams, identified as the total net weight of the methamphetamine seized from his possession.

doubt that the *Apprendi* error in this case did not affect the outcome of the proceedings, and, accordingly, did not affect Buckland's substantial rights.

## B.

### § 5G1.2(d) STACKING

There exists yet another basis on which to conclude that Buckland's sentence did not affect his substantial rights. The jury convicted him, in addition to the conspiracy charge, of three substantive counts, which, given *Apprendi* and the circumstances of this case, exposed him at sentencing on each count to a maximum statutory term of 20 years (240 months). However, the district court determined under U.S.S.G. § 2D1.1(a)(3) that his sentence should be 324 months based on a combined offense level of 36 and a Guideline range of 324 to 405 months. As in *United States v. Angle*, 254 F.3d 514 (4th Cir.) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 309, 151 L.Ed.2d 230 (2001),

> [h]ad the district court been aware when it sentenced [Buckland] that the maximum penalty for his drug trafficking conviction [per count] was 20 years, § 5G1.2(d) would have obligated [the court] to achieve the guideline sentence of [324] months imprisonment by imposing a term of 240 months or less on each count of conviction and ordering those terms to be served consecutively to achieve the total punishment mandated by the Guidelines.

*Id.* at 518. This process is known as "stacking," and we have previously acknowledged its validity in *Kentz*, 251 F.3d at 842, where we held that any error in a 160–month sentence was harmless for a defendant convicted of twenty-one counts, each with a five-year maximum, because § 5G1.2(d) would require consecutive sentences to achieve the total punishment calculated by the Guidelines.

In *Kentz*, we relied on *United States v. White*, 238 F.3d 537 (4th Cir.), *cert. denied,* 532 U.S. 1074, 121 S.Ct. 2235, 150 L.Ed.2d 225 (2001). *White* makes it clear that the keys to understanding this process are two. First, in calculating sentences in drug cases, two separate findings of drug quantity must be made, one under the relevant statute, and then another under the Guidelines. *Apprendi* dictates that drug quantity *under the statute* must be found by the jury (in a jury case), but *Apprendi* does not alter the authority of the judge to sentence *within* the statutory range provided by Congress. *See United States v. Lewis*, 235 F.3d 215, 218–19 (4th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 39, 151 L.Ed.2d 12 (2001) (holding the constitutional rule announced in *Apprendi* does not prohibit a district court from finding, by a preponderance of the evidence, facts relevant to the application of the Guidelines). To determine where to fix the actual sentence to be imposed, the judge calculates quantity under the Guidelines which in turn yields an offense level and a number of months for the sentence. If the sentence determined by the Guidelines exceeds the statutory maximum on a given count, the sentence on that count, of course, is limited by that ceiling. On the other hand, if the Guidelines calculation exceeds the statutory maximum for any count in a case involving multiple counts, then the mandatory provisions of § 5G1.2(d) come into play regarding the question of consecutive sentences. This is the second key to understanding stacking: § 5G1.2(d) is concerned solely with the question of sentencing on multiple counts, including consecutive sentences. In fact, § 3D1.5, which covers grouping in multiple count cases, refers the sentencing judge to Chapter Five once the combined offense level has been determined. When this approach is followed, not one of the stacked

consecutive sentences exceeds the statutory maximum for that count. Thus, *Apprendi* is not implicated.

*White*, which is a controlled substance case involving one conspiracy count and one possession with the intent to distribute and distribution count, explains stacking and § 5G1.2(d) as follows:

> In the case of multiple counts of conviction, the guidelines instruct that if the *total punishment mandated by the guidelines exceeds the highest statutory maximum*, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment. *See* U.S.S.G. § 5G1.2(d). For example, suppose a defendant is convicted of three offenses, each with a statutory maximum term of five years (60 months) imprisonment. If the district court determines that the appropriate sentence under the guidelines is 156 months, § 5G1.2(d) requires the imposition of consecutive terms on each count of conviction until the guidelines punishment is achieved.

Applying these principles here, it is evident that White's substantial rights were not affected by the imposition of a 360–month term of imprisonment on each count of conviction. Even if White is correct that the maximum penalty for each of his offenses was 240 months, the district court would still have been obligated to calculate a guideline sentence by making a finding regarding the quantity of narcotics attributable to White. And, in light of its determination that White's total punishment under the

guidelines should be 360 months imprisonment, the district court would have been obligated to reach that total sentence by imposing a term of imprisonment of 240 months or less on each count of conviction and ordering those terms to be served consecutively to achieve the total punishment mandated by the guidelines.

*Id.* at 543 (emphasis added).

Our understanding of this inside-the-Guidelines approach is fortified by the Supreme Court's holding in *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). The Court held in that case that a sentencing judge, in determining whether to apply a sentencing enhancement, could consider conduct of which the defendant had been acquitted, so long as that conduct had been adequately proved by a preponderance of the evidence. *Id.* at 149, 117 S.Ct. 633. The Court's reason for allowing an enhancement to be added to the defendant's base level offense notwithstanding an acquittal was that a sentence enhancement does "not punish a defendant for crimes of which he was not convicted, but rather increases his sentence because of the manner in which he committed the crime of conviction." *Id.* at 154, 117 S.Ct. 633. Similarly, the imposition of consecutive sentences, each for a term *not* in excess of the statutory maximum, punishes the defendant for the manner in which he committed the crimes based on the objective standard of quantity determined under U.S.S.G. § 2D1.1(a)(3)(C)(2) (Drug Quantity Table).[4]

---

**4.** *See also United States v. Price*, 265 F.3d 1097, 1109 (10th Cir.2001) ("Because § 5G1.2(d) is a mandatory provision ... [t]he district court would be required to impose twenty-year terms on defendant's seven drug convictions and to run these sentences ... consecutively, resulting in a total consecutive sentence of 208 years."); *United States v.*

*Page*, 232 F.3d 536, 542 (6th Cir.2000), *cert. denied*, 532 U.S. 1056, 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001) (using a § 5G1.2(d) stacking approach to affirm despite *Apprendi* error); *United States v. Ervasti*, 201 F.3d 1029, 1045–46 (8th Cir.2000) (explaining and implementing § 5G1.2(d)).

We conclude, therefore, that even if Buckland had been indicted only under 21 U.S.C. § 841(b)(1)(C), the trial judge, using the Guidelines and § 5G1.2(d), would have been required to sentence him to 324 months made up of consecutive sentences, each of which would *not* have exceeded 20 years. The *Apprendi* rule, therefore, would not be implicated. It follows as night the day that any failure of the indictment in this case to allege quantity in the possession counts was immaterial. *See Price*, 265 F.3d at 1108.

## C.

### FAIRNESS, INTEGRITY, AND PUBLIC REPUTATION

▮ Finally, even were we to assume that the error here did affect substantial rights, we would affirm nonetheless because, given the evidence and the record we have referred to, the error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 469–70, 117 S.Ct. 1544. *But see United States v. Cotton*, 261 F.3d 397, 403–04 (4th Cir.2001), *cert. granted*, —— U.S. ——, 122 S.Ct. 803, 151 L.Ed.2d 689 (2002) (holding that "failure to charge drug quantity in the indictment and submit it to the jury" seriously affects the fairness, integrity and public reputation of judicial proceedings so that the court should "exercise[its] discretion to recognize the error"). Our holding in this regard follows our analysis in *United States v. Keys*, 133 F.3d 1282 (9th Cir.1998) (en banc), *as amended by* 143 F.3d 479 *and* 153 F.3d 925, *cert. denied*, 525 U.S. 891, 119 S.Ct. 211, 142 L.Ed.2d 173 (1998), where we concluded that the failure of the district court to submit an element of the offense to the jury was inconsequential because (1) the evidence proving that element was overwhelming, and (2) the defendant did not contest it as part of his defense. Given the failure of Buckland's counsel to raise *any* quantity issue until the third sentencing hearing and then his concession that the minimum amount was one kilogram, both of the conditions noticed in *Keys* appear in this case.

The testimony of Buckland's accomplices about the quantity of drugs he conspired to distribute and possessed with the intent to distribute strengthens our certainty regarding the fairness, integrity and public reputation of the judicial proceedings. The evidence fairly indicates that Buckland was directly responsible for over nine kilograms. The district court, however, wisely and conservatively discounted this amount based on a review of the record and concluded, resolving any discrepancies in Buckland's favor, that the figure should be more than seven kilograms. The district court's calculations in this respect, although based on the preponderance standard, appear fully supported by the record and accurate. The district court's number is at least fourteen times the 500 gram threshold.

Accordingly, Buckland has failed to show that the *Apprendi* sentencing error affected the outcome of these proceedings or requires resentencing, and we affirm his sentence of 324 months.

## V

### CONCLUSION

In sum, we hold that it is "fairly possible" to give § 841 and its various provisions a constitutional construction. Our decision that the statute is not facially unconstitutional, of course, results in felicitous unanimity among the United States Circuit Courts of Appeal. We conclude also that any error in determining Buckland's 324 month sentence was harmless.

As to Buckland's other claims that (1) he was entitled to points for acceptance of responsibility, (2) he received ineffective assistance of counsel, and (3) that the evidence was insufficient to establish the type of methamphetamine, they have no merit.

AFFIRMED.

HUG, Circuit Judge, Concurring and Dissenting. Circuit Judges REINHARDT and T.G. NELSON join in part V of Judge Hug's opinion:

Basically, I agree with the majority opinion with the exception of Section IV B, from which I dissent. I concur in the judgment.

Section III of the opinion correctly determines that Section 841 is constitutional and that Sections 841(b)(1)(A) and 841(b)(1)(B), which set forth increased maximum sentences for drug quantity and type, must be charged in the indictment and proved to a jury beyond a reasonable doubt. Where I differ with section III is that I believe that those statutory sections prescribe separate aggravated offenses, even though they are labeled as penalties, and the quantities specified are elements of those aggravated offenses. The opinion appears to conclude that these sections fall into a new category denominated "sentencing factors" that must be charged in the indictment and proved to a jury beyond a reasonable doubt, but are not elements of aggravated crimes. I believe this unnecessarily complicates the inquiry in this case and the application of Section 841 in future cases.

In applying recent Supreme Court cases, the proper inquiry is whether the statute describes "elements of a crime" or "sentencing factors," even though they may be labeled as sentencing factors or penalties. The importance of this is that in any federal criminal case, such as this one, once we determine that the statute describes elements of an offense, it is then treated as any other federal criminal offense. The elements must be charged in the indictment, proved to a jury beyond a reasonable doubt, and upon conviction the defendant is sentenced under the United States Sentencing Guidelines.

Treating Supreme Court precedent as establishing a new category of "sentencing factors" that must be proved to a jury beyond a reasonable doubt rather than as recognizing elements of certain crimes, has led judges in some opinions in other circuits to indicate that charging the quantity in an indictment is not necessary, or that the quantity must be submitted to a jury on some occasions and not on others. I believe it is clear that the Supreme Court is concerned with the simple distinction between elements of a crime and sentencing factors and that it has found occasions in which the statutes involved actually established elements of a crime even though they are labeled as sentencing factors.

I outline my approach to this case as follows:

1. I agree with the majority opinion that the quantities specified in 21 U.S.C. §§ 841(b)(1)(A) and (B) state facts that must be charged in an indictment and proved to the jury beyond a reasonable doubt, even though they are labeled as sentencing factors.

2. Section 841(a) combined with Section 841(b)(1)(C) states one offense when the amount of methamphetamine is less than 50 grams. Section 841(b)(1)(B) states another offense when the amount of methamphetamine exceeds 50 grams and is less than 500 grams. Section 841(b)(1)(A) states a third offense when the amount of methamphetamine exceeds 500 grams. The quantities of methamphetamine that exceed the 50 grams of the basic Section 841(a) offense are elements of aggravated

crimes that must be alleged in the indictment and proved to a jury beyond a reasonable doubt.

3. The indictment of Buckland charged him with 1,000 grams of methamphetamine. This is sufficient to charge that he is responsible for over 500 grams and is guilty of a violation of Section 841(b)(1)(A). The jury was not instructed to find quantity, however there was overwhelming evidence that he possessed over 500 grams (he was personally found with 749 grams and admitted to 1,000 grams). He did not object to the failure to instruct the jury on quantity, and thus, we review under the plain error standard. Because the jury would have found over 500 grams quantity beyond a reasonable doubt, the error did not affect his substantial rights under the plain error doctrine.

4. The judge was then justified in sentencing him for the aggravated crime under Section 841(b)(1)(A), which carries a maximum sentence of life in prison.

5. The judge was required to sentence him under the United States Sentencing Guidelines, which he did. He properly arrived at an offense level of 36 with a criminal history category of IV, which provides a sentencing range of 324 months to 405 months. He sentenced the defendant to 324 months, which is within the statutory maximum sentence of life in prison, provided in Section 841(b)(1)(A).

6. This is all that need be decided and the decision of the district court should be affirmed on this basis.

7. From an administrative standpoint this works well for the review of cases which have already been tried. The key inquiries are (a) whether the aggravated offense was charged in the indictment, and (b) whether the jury did find or reasonably could have found beyond a reasonable doubt the quantity required for the offense. If either requirement is not met then the defendant can be sentenced only for the offense for which he was indicted and of which the jury found him guilty. This would be the basic offense under Section 841(a) with the sentence provided under Section 841(b)(1)(C).

8. From an administrative standpoint this approach also would work well for future prosecutions. The defendant would be charged in the indictment with the quantity required for one of the three offenses embodied in Section 841 (Section 841(a), Section 841(b)(1)(A), or Section 841(b)(1)(B)). If the quantity charged was for a violation of the most serious offense, 841(b)(1)(A), but only a quantity required for either of the lesser offenses was proven, the jury could find the defendant guilty of that lesser offense under a lesser included offense instruction. The judge would sentence under the Sentencing Guidelines.

9. I dissent from the alternate basis for the affirmance of the district court specified in Section IV B of the majority opinion, not only because it is unnecessary, but also because it is of questionable soundness.

I.

*The Provisions of Section 841 are Constitutional.*

I agree with the majority opinion that we should interpret a statute, if reasonably possible, so as to save a statute from unconstitutionality. As the majority opinion points out, the Supreme Court recently emphasized this in *INS v. Enrico St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 2279, 150 L.Ed.2d 347 (2001), stating:

[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternate interpretation of the statute is "fairly

575

possible," ... we are obligated to construe the statute to avoid such problems.

It is apparent from the statute that Congress' overarching intent was to provide greater punishment for drug offenses when the quantity of the drugs is larger. I agree with the majority opinion's analysis that Section 841 can reasonably and constitutionally be interpreted to mean that the separate quantities identified in Section 841(b) must be proved to a jury beyond a reasonable doubt. Although Section 841(b) is contained under the label "Penalties," the statute does not specify whether the judge or the jury is to make the determination or under what burden of proof, thus it is open to a fair interpretation that, in order to avoid unconstitutionality, quantities must be determined by a jury beyond a reasonable doubt.

## II.

### Elements of Crimes.

My first disagreement with the majority opinion is that it indicates that the Supreme Court cases create a new category of criminal enforcement—penalties that must be charged in an indictment and proven to a jury beyond a reasonable doubt. I believe that the Supreme Court is saying in its recent opinions that certain statutes contain elements of a crime even though they are mislabeled as penalties or sentencing factors.

The importance of this distinction is two fold: (1) Some opinions in other circuits have also treated this as a new category and have indicated that the quantity need not be alleged in the indictment; (2) some opinions have also treated this as a new category and concluded that the quantity need be submitted to the jury only if the sentence exceeds a statutory maximum, thus quantity need be submitted in some cases and not in others.

I hasten to note that this is not true of the majority opinion, which states:

> We honor the intent of Congress and the requirements of due process by treating drug quantity and type which fix the maximum sentence for a conviction as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt.

This is the exact treatment necessary to prove an element of a crime, and thus I find it puzzling that the opinion does not simply acknowledge that the quantity in those circumstances is an element of an aggravated crime. The problem with treating this as a separate category, neither an element of a crime nor a sentencing factor, arises not from the majority opinion in which it treats the indictment and proof of these factors exactly as they would be treated if they were elements of a crime. The problem arises with the treatment in other opinions where they may not have to be charged in the indictment or may be required to be proved to a jury beyond a reasonable doubt in some circumstances but not others.

In my opinion the Supreme Court has made it quite clear that the inquiry in these cases is between elements of a crime and sentencing factors, acknowledging that elements of a crime can be mislabeled as sentencing factors. In *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), the opening paragraph of that opinion makes this point very plain.

> In this case we once again decide whether words in a federal criminal statute create offense elements (determined by a jury) or sentencing factors (determined by a judge). *See Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct.

1219, 140 L.Ed.2d 350 (1998). The statute in question, 18 U.S.C. § 924(c) (1988 ed., supp. V), prohibits the use or carrying a "firearm" in relation to a crime of violence, and increases the penalty dramatically when the weapon used or carried is, for example, a "machinegun." We conclude that the statute used the word "machinegun" (and similar words) to state an element of a separate offense.

*Id.* at 121, 120 S.Ct. 2090. It is significant that *Castillo, Jones* and *Almendarez–Torres* were all cases dealing with the interpretation of federal criminal statutes. In each of these cases the distinction was between an element of a crime and a sentencing factor, not the creation of a new category for criminal enforcement of a "sentencing factor to be proven to a jury."

The Supreme Court stated in *Jones,* 526 U.S. at 232, 119 S.Ct. 1215,

> Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.... While we think the fairest reading of Section 2119 treats the fact of serious bodily harm as an element, not a mere enhancement, we recognize the possibility of the other view. Any doubt that might be prompted by the arguments for that other reading should, however, be resolved against it under the rule, repeatedly affirmed, that "where a statute is susceptible of two constructions, by one of which grave and constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."

*Id.* at 239, 119 S.Ct. 1215.

Similarly in *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the issue was conviction of a firearms charge

that bore a maximum sentence of ten years, but was enhanced pursuant to another state statute that allowed the judge to increase the sentence if it involved a hate crime. It is also apparent in the *Apprendi* opinion that the justices were concerned with drawing a distinction between elements of a crime and sentencing factors. This is most clearly set forth in the concurring opinion of Justice Thomas, in which he wrote "This case turns on the seemingly simple question of what constitutes a 'crime.'" *Id.* at 499, 120 S.Ct. 2348. He then related all of the constitutional protections that are afforded to a defendant who has been charged with a crime, and stated, "All of these constitutional protections turn on determining which facts constitute the 'crime'—that is which facts are the 'elements' or 'ingredients' of a crime." *Id.* at 500, 120 S.Ct. 2348. Justice Thomas then further emphasized that the essential determination is between elements of a crime and sentencing factors.

> Sentencing enhancements may be new creatures, but the question that they create for courts is not. Courts have long had to consider which facts are elements in order to determine the sufficiency of an accusation (usually in an indictment). The answer that courts have provided regarding the accusation tells us what an element is, and it is then a simple matter to apply that answer to whatever constitutional right may be at issue in a case—here [*In re*] *Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] and the right to a trial by jury. A long line of essentially uniform authority addressing accusations, and stretching from the earliest reported cases after the founding until well into the 20th Century, establishes that the original understanding of which facts are

elements was even broader than the rule the Court adopts today.

This authority establishes that a "crime" includes every fact that is by law a basis for imposing or increasing punishment (in contrast with a fact that mitigates punishment). Thus, if the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact—of whatever sort, including the fact of a prior conviction—the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime. Similarly, if the legislature, rather than creating grades of crimes, has provided for setting the punishment of a crime based on some fact—such as a fact that is proportional to the value of stolen goods—that fact is also an element. No multi-factor parsing of statutes, of the sort that we have attempted since *McMillan [v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)]*, is necessary. One need only look to the kind, degree or range of punishment to which the prosecution is by law entitled for a given set of facts. Each fact necessary for that entitlement is an element.

*Id.* at 500–501, 120 S.Ct. 2348.

Justice Thomas's statement that the inquiry is whether a factor is an element of the crime is confirmed in footnote 19 of the majority opinion where it is stated:

[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense. See *post* at 2368–2369 (THOMAS, J., concurring) (reviewing the relevant authorities).

*Id.* at 494 n. 19, 120 S.Ct. 2348. The majority opinion in *Apprendi* also stated:

[The point that labels do not afford an acceptable answer] applies as well to the constitutionally novel and elusive distinction between 'elements' and 'sentencing factors.' ... Despite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?

*Id.* at 494, 120 S.Ct. 2348.

Confusion has arisen in the interpretation of the *Apprendi* case because of the failure to recognize that it is determining the constitutionality of a state criminal statute, whereas *Castillo* and *Jones* are dealing with the interpretation of federal criminal statutes. It is clear that both *Castillo* and *Jones*, in dealing with federal criminal statutes, are determining whether a provision in the statute is an element of the crime or is a sentencing factor. The passages that I have just quoted from *Apprendi* make clear that *Apprendi* is also concerned with the distinction between elements of a crime and sentencing factors. The statement in *Apprendi* that gives rise to a misinterpretation that *Apprendi* is creating a new criminal category of sentencing factors that have to be proved beyond a reasonable doubt to a jury, as opposed to simply being elements of the crime that are mislabeled as sentencing factors is the following:

In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact

that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'

*Id.* at 490, 120 S.Ct. 2348.

It is important to parse that statement in order to determine the full meaning of the Court. The belief that *Apprendi* creates a new category, rather than simply determining whether a statutory provision is an element of a crime and not just a sentencing factor, flows from the following sentence from that quotation: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* (emphasis added).

It must be remembered that the issue before *Apprendi* was a statute which required a finding of fact that did increase the penalty for a state crime beyond the statutory maximum. That does not mean it has general applicability to federal criminal offenses, with the limitation that the *only* such provisions labeled as sentencing factors that have to be submitted to a jury are those that exceed "the prescribed statutory maximum." *Id.* Instead, the controlling segment of that passage is the broader quotation from *Jones:* "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id.* According to *Apprendi, one* such unconstitutional act is for a state to increase the penalty for a crime beyond the prescribed statutory maximum and having a judge decide the fact issue, rather than submitting it to a jury. That is not the *only* circumstance in which such a provision labeled as a sentencing factor is required to be submitted to a jury.

This broader view is confirmed by a later passage of the majority opinion:

Despite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form but of effect—does the required finding expose the defendant to a greater punishment then that authorized by the jury's guilty verdict?

*Id.* at 494, 120 S.Ct. 2348.

The importance of recognizing that we are determining the elements of an offense in this federal criminal statute is that it is to be treated as any other federal criminal offense. It must be charged in the indictment; it must be proved to a jury beyond a reasonable doubt (in a jury case) and the sentence imposed must be in accordance with the U.S. Sentencing Guidelines.[1]

---

1. At least two of our sister circuits agree that the various penalty provisions of Section 841(b) constitute different crimes with different elements. *See United States v. Strayhorn,* 250 F.3d 462, 468 (6th Cir.2001); *United States v. Doggett,* 230 F.3d 160, 164–65 (5th Cir.2000). Judge Tashima's opinion also agrees that the provisions of § 841(b)(1)(A) and (B) are elements of the offense. However, the opinion states that this requires a conclu-sion that those sections are unconstitutional. In my view the important aspect of the statute is that it does not state whether the essential facts for those sections are to be decided by a judge or a jury. Thus the statute can be interpreted to avoid constitutional doubt. With regard to the legislative history, it is quite clear that Congress intended to punish offenders to a greater extent for larger quantities of drugs. It is not clear that Congress

## A.

### *Necessity of an Indictment*

A defendant has a constitutional right to be tried and convicted only on charges presented in an indictment and returned by a grand jury. As noted in *Apprendi*, "[T]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted," *Id.* at 490 n. 15, 120 S.Ct. 2348 (quoting *United States v. Reese*, 92 U.S. 214, 232–33, 23 L.Ed. 563 (1875)). Similarly, the opinion in *Castillo* states that if the statutory factors define a separate crime, "the indictment must identify the [element] and a jury must find that element proved beyond a reasonable doubt." *Castillo*, 530 U.S. at 123, 120 S.Ct. 2090. The Supreme Court has also said "that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. U.S.*, 361 U.S. 212, 215–16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

In *United States v. Promise*, 255 F.3d 150, 161–164 (4th Cir.2001) (en banc), Judge Wilkins acknowledged this requirement, but concluded it was a requirement that could be avoided under the plain error standard. Judge Motz wrote a persuasive dissent elaborating on the essential requirement of an element of the crime being charged in the indictment and the inability constitutionally to convict a defendant of a crime for which he was not charged. *Id.* at 186. Three judges concurred in her dissent and three others agreed on this point, but affirmed the conviction on other grounds. Thus, seven of the eleven judges agreed with Judge Motz's dissent on this point with regard to the indictment.

I firmly agree that every element of a crime must be charged in an indictment and a failure to do so cannot be overcome under the plain error doctrine. In my view, it is simple—in the United States a person cannot be convicted of a crime for which he has not been properly charged.

In *United States v. Brough*, 243 F.3d 1078, 1080 (7th Cir.2001), the opinion states "a post-*Apprendi* indictment should specify, and the trier of fact must be instructed to determine, not only the elements of the *offense*, which appear in § 841(a), but also the events listed in § 841(b) on which the prosecutor relies to establish the maximum sentence." This unnecessarily complicates the process when a grand jury is not only expected to identify the elements of a crime, but also certain types of sentencing factors. This is completely unnecessary when, as I have pointed out, the Supreme Court identifies these mislabeled sentencing factors as elements of a crime. Thus, the indictment merely has to identify the elements of the crime, and the jury is instructed to find beyond a reasonable doubt whether the

---

was intent on having the quantity determined by a judge. To my knowledge no other circuit court opinion reaches the conclusion that labeling these elements of the crimes as penalties results in declaring them to be unconstitutional. In the *Jones* case the Court noted some support from legislative history that Congress intended the enhancements provisions to be sentencing factors. Committee reports and floor debate referred to the bill as "enhanced penalties for an apparently single carjacking offense." *Jones*, 526 U.S. at 232, 119 S.Ct. 1215. The Court acknowledged

that there were other possible interpretations of the wording of the statute, but it resolved its interpretation "under the oft repeated rule that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909))." *Id.* at 239, 119 S.Ct. 1215.

defendant is guilty of the crime charged, and need not be confused with the awkwardness of determining "sentencing factors" beyond a reasonable doubt.

As I read the majority opinion, I believe this awkwardness would exist in this circuit. A grand jury will have to indict not only for elements of a crime, but for certain sentencing factors, and the jury will have to be instructed to find not only the elements of a crime, but also certain sentencing factors beyond a reasonable doubt. This unnecessary complication should be avoided given the Supreme Court's identification of these mislabeled sentencing factors as elements of crimes.[2]

## B.

### The Interpretation of "Beyond the Prescribed Statutory Maximum."

As I have noted, *Apprendi* is misinterpreted as meaning that only if the sentence is "beyond the prescribed statutory maximum" need the quantity be submitted to the jury. An example of this is the recent Third Circuit case, *United States v. Vazquez*, 271 F.3d 93 (3rd Cir.2001) (en banc). The majority opinion stated, "The *Apprendi* violation occurred when the judge, rather than the jury, determined drug quantity and then sentenced Vazquez to a more than 24 year sentence, *a term in excess of his prescribed 20 year statutory maximum under § 841(b)(1)(C)*." *Id.* at 99 (emphasis added). Thus, the violation of *Apprendi* depended upon the sentence exceeding the statutory maximum, which

was in accordance with a prior Third Circuit case.

Judge Becker's concurring opinion, joined by Judge Ambro (which was necessary for the majority decision of the en banc court), stated that:

> It has become clear to me, however, upon reconsidering § 841 in light of *Apprendi*, that our prior statutory construction ought to be abandoned altogether. I submit that drug type and quantity are *always* elements of an offense under § 841.... I believe that drug type and quantity should not be treated as element-like factors only when they increase the prescribed statutory maximum.

*Id.* at 108. He then did an extensive examination of Section 841's legislative history and stated that the legislative history and statutory structure indicate that drug type and quantity are elements of a Section 841 offense. He acknowledged that Congress possibly could have intended otherwise, but concluded with this comment.

> It strains credulity, however, to assert that Congress intended for type and quantity to be treated as sentencing factors in some cases and as elements in others. I know of no statute written in such a manner, nor am I aware of any statutes construed this way.

*Id.* at 113.

This expresses my view very well. As I have mentioned, the reason for the misinterpretation of *Apprendi* is because of the failure to recognize that it is interpreting a state criminal statute and thus losing the

---

**2.** The majority opinion notes that Judge Hug, in *United States v. Wright*, 742 F.2d 1215, 1220 (9th Cir.1984), found that an item clearly labeled as a penalty had been charged in an indictment and submitted to the jury for determination. This 1984 opinion was years before *Jones, Castillo* and *Apprendi*, which identified this type of sentencing factor as an element of a crime. However, even in 1984, the opinion did correctly determine that the factor was properly charged in the indictment and submitted to the jury. If Judge Hug were to amend the 1984 opinion at this time, he would simply add "because it is an element of a crime."

broader message quoted and endorsed from *Jones,* which was interpreting a federal criminal statute.

The interpretation that quantity is to be submitted to a jury only if the judge's sentence exceeds the statutory maximum could not be applied prospectively. How would one know at the time of trial whether, if the defendant is convicted, the judge's ultimate sentence would exceed the statutory maximum? The same standard should be applied prospectively and retrospectively. "[D]oes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. The inquiry should not be governed by whether the judge's sentence exceeded the statutory maximum.

### III.

*Offenses under Sections 841(a) and (b).*

As I mentioned earlier, Sections 841(a) and (b) set forth three separate offenses applicable to this case. Section 841(a) is the basic offense punishable under Section 841(b)(1)(C) for unspecified amounts of methamphetamine up to 50 grams. The next most serious offense is under Section 841(b)(1)(B) when the amount of methamphetamine exceeds 50 grams but is less than 500 grams. The most serious offense is under Section 841(b)(1)(A) when the amount of methamphetamine exceeds 500 grams. If the indictment is only for a violation of Section 841(a) with no quantity specified, then only a sentence under Section 841(b)(1)(C) is applicable, for which the statutory maximum is 20 years. If the indictment is under Section 841(a) with an alleged quantity from 50 grams to 500 grams, then a sentence under Section 841(b)(1)(B) is applicable, with a maximum of 40 years. If the indictment is under Section 841(a) with an alleged quantity of over 500 grams, a sentence under Section 841(b)(1)(A) is applicable, with a maximum of life in prison.

Once we acknowledge that these are separate offenses, then we treat those offenses like any other federal criminal offenses—they must be charged in an indictment, proved to a jury beyond a reasonable doubt, and sentenced under the Sentencing Guidelines.

### IV.

*Applicability to Buckland.*

The indictment of Buckland charged him with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) specifying that the conspiracy involved 1,000 grams or more of a mixture of, or substance containing a detectable amount of, methamphetamine. He was also charged with three counts of possession with intent to distribute methamphetamine. The jury was not instructed to find the quantity and the defendant did not request such an instruction. Thus, we review the failure to instruct on an element of the offense for plain error. There is no doubt this was error and the error was plain. The essential question is whether it affected his substantial rights. The evidence was overwhelming that he was personally found with 749 grams, and admitted to 1,000 grams. I agree with the majority opinion that the jury would have found the 500 grams quantity beyond a reasonable doubt, and thus his substantial rights were not affected, and that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

The judge was thus justified in sentencing him for the aggravated crime under Section 841(b)(1)(A), which carries a maximum sentence of life in prison. In sentencing Buckland, he was not free, however, to sentence anywhere within the range

of that section up to a maximum of life in prison, but he was instead required to sentence in accordance with the Sentencing Guidelines.

Under the 1994 sentencing guidelines applicable at that time, the probation officer recommended an offense level of 36 based upon a combined quantity of 27 pounds (12.47 kg.) of methamphetamine. The district judge concluded that the proper quantity was eight kilograms which led to an offense level of 34 with a criminal history of VI. He enhanced the offense level by two points for possession of a weapon to an offense level of 36, which with a criminal history of VI yielded a sentencing range of 324 to 405 months. He imposed a sentence of 324 months, which was, of course, less than the maximum sentence of life in prison. The judgment of the district court should be affirmed on this basis.

As I mentioned at the outset, when we view the determination of quantities as elements of the offense, as I believe the Supreme Court did in *Jones, Castillo* and *Apprendi*, it enables the court to treat these Section 841 offenses just the same as any other offense and greatly simplifies the review of cases already tried and of the trial of cases in the future.

## V.

### *Stacking Consecutive Sentences.*

The majority opinion gives an alternate basis for the affirmance of Buckland's sentence of 324 months. It assumes that even if Buckland was not indicted for a conspiracy to violate Section 841(b)(1)A with a quantity of more than 1,000 grams, the sentence of 324 months can still be upheld by stacking consecutive sentences on the possession counts pursuant to Section 5G1.2(d) of the sentencing guidelines.

This assumes that Buckland was indicted only for a violation of Section 841(a) with the sentence to be calculated under Section 841(b)(1)(C). Under that charge the jury would only be required to consider whether Buckland was responsible for a trace amount of methamphetamine up to 50 grams. Thus, the jury could only be considered to have found beyond a reasonable doubt a maximum of 49 grams on each of the four counts. In order to determine the appropriate sentence under the then applicable 1994 sentencing guidelines we would turn to Section 3D1.5 to determine the "total punishment" for these drug offenses. Commentary 2 requires that we combine the quantities for the four offenses. Thus the quantity on each of 49 grams $\times$ 4 = 196 grams. We then go to Section 2D1.1 and determine that this falls within the category of at least 100 grams but less than 400 grams, which denominates an offense level of 26. The judge added two levels for possession of a firearm, bringing the level to 28. We then turn to the charge in Chapter 5 and find that for offense level 28, with a criminal history of VI, the sentencing range would be 140–175 months. We then turn to Section 5G1.2 "Sentencing on Multiple Counts of Conviction" Subsection (c), which applies in this case.

> If the sentence imposed on the count carrying the highest statutory maximum [240 months] is adequate to achieve the total punishment [175 months], then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

SG Section 5G1.2(c). Thus, in this hypothetical there would be no stacking of consecutive sentences because the "total punishment" of 175 months does not exceed the statutory maximum of 240 months. Subsection (d) is not applicable because it comes into play only if the total punishment exceeds the statutory maximum.

If, however, we take the total quantity found by the judge of eight kilograms, and the two-level increase for the firearm, this leads to an offense level of 36. With a criminal history of VI the applicable sentencing range is 324–405 months. The "total punishment" the judge imposed of 324 months does exceed the statutory maximum and thus subsection (d) would be applicable:

> If the sentence imposed on the count carrying the highest statutory maximum [240 months] is less than the total punishment [324 months] then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

SG Section 5G1.2(d). Thus, one of the sentences on a possession count would run consecutively to the extent of 84 months (324–240). It is important to note that this calculation is not based on the combined maximums of 60 years of the other counts as is advanced in some opinions.[3] The judge could never have sentenced to 60 years for these federal criminal offenses, because he is confined by the sentencing guidelines. Instead it is the actual sentences he has imposed on the other counts that are used in the Section 5G1.2(d) calculation as I have illustrated.

The difference between these two approaches is the question of whether it is the maximum quantity of methamphet- amine that the *jury* could have found beyond a reasonable doubt, because of the limited charge in the indictment, or whether it is the quantity the *judge* found after the trial by a preponderance of the evidence. If it is the former, the maximum total punishment that could be imposed under this hypothetical is 175 months and there is no basis for stacking. If it is the latter, the total punishment of 324 months could be sustained by stacking consecutive sentences.[4]

As I have noted, the Supreme Court stated in *Apprendi,* "[T]he relevant inquiry is not one of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. In the majority opinion's hypothetical conviction of only a Section 841(a) offense, it is inescapable that the 324 month sentence would exceed the punishment authorized by the jury's guilty verdict.

The Supreme Court pointed out in *Jones* the seriousness of the Sixth Amendment requirement that certain findings must be made by a jury and the importance of submitting to a jury "a fact that sets the sentencing range." *Jones,* 526 U.S. at 243, 119 S.Ct. 1215. The Court then illustrated the importance in the case under consideration. There the basic offense was carjacking, punishable by a maximum of 15 years in prison. The statute provided for an increased sentence of up to 25 years, if serious bodily harm resulted, and an in-

---

**3.** An example is the opinion in *United States v. Price,* 265 F.3d 1097, 1109 (10th Cir.2001), cited in the majority opinion. That opinion states that the judges would be required to impose 20–year consecutive sentences resulting in a total consecutive sentence of 208 years in order to achieve the total punishment.

**4.** Even if Buckland were sentenced to the statutory maximum for each of his Section 841(a) drug offenses, the total punishment would not exceed the statutory maximum and thus 5G1.2(c) would apply, not 5G1.2(d). There would be no basis for stacking.

creased sentence of up to life, if death resulted. The Court stated:

> If a potential penalty might rise from 15 years to life on a non jury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15–year sentence would *merely open the door to a judicial finding sufficient for life imprisonment.*

*Id.* at 243–44, 119 S.Ct. 1215 (emphasis added). There is a close parallel to the alternate holding in the majority opinion. A charge in an indictment and a jury conviction of a violation of the Section 841(a) offense, which carries a maximum sentence of 20 years, would "merely open the door to a judicial finding sufficient for life in prison." [5]

## VI.

### Conclusion

I dissent from Section IV B. I concur in much of the rest of the majority opinion, but not all, and I concur in the judgment.

TASHIMA, Circuit Judge, with whom REINHARDT and PAEZ, Circuit Judges, join, dissenting:

Because the majority, while purporting to follow the "basic principles of statutory construction," Maj. op. at 564, fails to do so, I dissent. My position that 21 U.S.C. § 841 is facially unconstitutional is fully set forth in the panel opinion. *See United States v. Buckland,* 259 F.3d 1157 (9th Cir.), *reh'g en banc granted,* 265 F.3d 1085 (9th Cir.2001). Rather than restate all of the reasons for my position, to which I continue to adhere, I emphasize only a few salient points.

The overarching principle of statutory construction is not to avoid finding a statute unconstitutional at all costs. Rather, as the majority acknowledges, "[w]here Congress has made its intent clear, 'we must give effect to that intent.'" *Miller v. French,* 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (quoting *Sinclair Ref. Co. v. Atkinson,* 370 U.S. 195, 215, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962)). Thus, although I agree that we should avoid "constitutionally doubtful constructions" where fairly possible,

> this canon of construction does not give a court the prerogative to ignore the legislative will in order to avoid constitutional adjudication; "[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of the statute …" or judicially rewriting it.

*CFTC v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (emendations in the original) (quoting *Aptheker v. Sec'y of State,* 378 U.S. 500, 505, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964) (internal quotation marks and citation omitted)). In this case, congressional intent is clear, and the majority's attempt to avoid it carries its opinion to the point of judicially rewriting § 841.

---

**5.** The majority opinion relies upon *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). The Supreme Court decided *Jones* in 1999 and *Apprendi* in 2000. The hypothetical conviction of a Section 841(a) offense, with a judge determining a sentence that exceeds the maximum for that offense, much more closely parallels the *Jones* case than the *Watts* case. To the extent *Apprendi* and *Jones* provide additional guidance as to what facts must be submitted to a jury and proven beyond a reasonable doubt, the most recent pronouncements of the Court should govern our decision.

The Supreme Court's decisions in *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), set forth the principles of statutory construction that should guide us in this case. The majority nowhere explains why we should ignore the analyses in three recent High Court cases that directly address the very issue we face.

The question is whether the statute "treat[s] facts that lead to an increase in the maximum sentence as a sentencing factor" and is therefore unconstitutional. *Castillo*, 530 U.S. at 124, 120 S.Ct. 2090. In making this determination, the Court, by example, shows us that our task is first to examine the statute's "literal language" and its "overall structure." *Id.* Like 18 U.S.C. § 924, the statute at issue in *Castillo*, § 841's structure clearly differentiates between the elements of the offense and factors to be considered at sentencing. In *Castillo*, the Court had no trouble in finding that the structure of § 924 "clarifie[d] any ambiguity" regarding congressional intent because "[t]he first part of the opening sentence clearly and indisputably establishes the elements of the basic federal offense," while the next three sentences "refer directly to sentencing." *Id.* at 125, 120 S.Ct. 2090.

Similarly, § 841(a) "clearly and indisputably" establishes the elements of the offense, and § 841(b) refers directly to sentencing. This is why, as the majority acknowledges, prior to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147

L.Ed.2d 435 (2000), every circuit in the country treated drug quantity as a sentencing factor. *See* Maj. op. at 564 & n. 2 (citing cases). Yet, the majority insists that § 841 is ambiguous because it does not *specify* that drug quantity is to be determined by the judge at sentencing. The majority, in fact, twists logic by concluding that the statute's silence somehow means that "the text of the statute is dispositive" in support of its position. *Id.* at 565. The text of the statute *is* dispositive; it clearly sets forth elements in § 841(a) and sentencing considerations in § 841(b).[1]

The majority's position rests on the fact that "[t]he statute does not specify who shall determine drug quantity or identify the appropriate burden of proof for these determinations." *Id.* at 565. In such case, of course, accepted rules of statutory construction require the court to examine the statute's legislative history in order to determine Congress' intent in enacting the statute. *See, e.g., Toibb v. Radloff*, 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (" 'Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.' " (quoting *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984))). Yet, rather than following accepted principles of statutory construction and attempting to ascertain what Congress intended in light of this ambiguity, the majority goes on to construe this silence as a license for the court to legislate its own solution.

---

1. Notwithstanding the majority's reluctance to rely on the headings contained in the statute, " 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." *Almendarez–Torres*, 523 U.S. at 234,

118 S.Ct. 1219 (quoting *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947)). Moreover, as in *Castillo*, § 841's structure is easily ascertainable even without the aid of statutory headings.

Contrary to the majority's conclusion, it is untrue that "it has been the judiciary, not Congress, which allocated the responsibility for determining drug quantity under § 841 to the courts." Maj. op. at 567. The legislative history is clear. *See, e.g.,* H.R.Rep. No. 101–681(I), at 110 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6514–15 (noting the need for judges to have "flexibility when fashioning a sentence" under § 841(b)); H.R.Rep. No. 91–1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4576 (describing the penalties section of § 841 and noting that, "[t]he foregoing *sentencing procedures* give maximum flexibility to *judges,* permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case") (emphasis added); *cf. United States v. Morgan,* 835 F.2d 79, 81 (5th Cir.1987) (noting that legislative history supported the then-prevailing view that drug quantity was not an element of the offense in § 841). The government, in fact, conceded at oral argument that Congress intended drug quantity to be a sentencing factor to be determined by the judge by a preponderance of the evidence. And we, like all of the other circuits, had no difficulty in concluding that Congress intended that judges make the drug quantity finding. *See United States v. Nordby,* 225 F.3d 1053, 1058–59 (9th Cir.2000) (stating, shortly after *Apprendi,* that "Congress ... clearly intended that drug quantity be a sentencing factor, not an element of the crime under § 841," and listing cases); *see also, e.g., United States v. Jackson,* 207 F.3d 910, 920 (7th Cir.) (stating, only a few months prior to *Apprendi,* that "[i]t is apparent that Congress intended the type and quantity of the drugs distributed by a defendant convicted under section 841(a) to be determined at sentencing"), *judgment vacated and remanded for further consideration in light of* Apprendi, 531 U.S. 953, 121 S.Ct. 376, 148 L.Ed.2d 290 (2000); *United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989) ("the quantity of the controlled substance is a sentencing issue").

The majority gives us no clue on why it now concludes *sub silentio* that the prior reading of congressional intent (that judges were intended to make the drug quantity determination) by all courts was mistaken. What happened to the accepted rules of statutory construction, especially the cardinal rule of ascertaining legislative intent? Why does *Apprendi* strip our prior holdings of precedential value? *See* Maj. op. at 567. *Apprendi* does not change the principles of statutory construction, nor does it change the congressional intent that is undeniable from the structure and legislative history of the statute. Now, because application of longstanding principles of statutory construction will invalidate an important federal statute, the majority conveniently jettisons those principles and fashions its own makeshift solution, even though that solution clearly is contrary to congressional intent.

The majority finds the distinction between sentencing factors and elements to be "inappropriate" and "misleading," terming it "conceptual pigeonholing." Maj. op. at 565. Yet, determining whether Congress intended a fact to be an element or a sentencing factor was precisely the Supreme Court's approach in determining the constitutionality of the statutes at issue in *Castillo, Jones,* and *Almendarez–Torres. See Castillo,* 530 U.S. at 123–31, 120 S.Ct. 2090 (discussing whether Congress intended statutory references in 18 U.S.C. § 924 to fire-arm types to constitute elements of an offense or sentencing factors, and noting that treating the facts as sentencing factors "would give rise to significant constitutional questions"); *Jones,* 526 U.S. at 232, 119 S.Ct. 1215 (stating that "[m]uch turns on the determination that a

fact is an element of an offense rather than a sentencing consideration," and going on to determine congressional intent in enacting the statute); *Almendarez–Torres*, 523 U.S. at 226–35, 118 S.Ct. 1219 (where the statute did not specify whether a provision "define[d] a separate crime or simply authorize[d] an enhanced penalty," the Court "look[ed] to the statute before us and ask[ed] what Congress intended"). In *Apprendi*, the Court did not reject its analyses in *Jones* and *Castillo*. The statute in *Apprendi did* specify that the fact at issue was to be determined by the judge at sentencing; § 841 does not. Rather than supporting the majority's position, this difference requires that we follow the Court's analysis in *Castillo, Jones,* and *Almendarez–Torres*, where, similar to § 841, none of the statutes at issue specified who was to find the fact at issue and by what standard.[2] Where the Supreme Court was faced with the ambiguity we face in § 841, did the Court therefore ignore legislative history and construe the statute as it wished, regardless of congressional intent? Of course not, because that would violate basic tenets of statutory construction. Yet, that is exactly what the majority has done here.

Mysteriously, the majority finds support for its conclusion in *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948), a case in which the Court declined to do exactly what the majority does here. In *Evans*, the statute at issue indicated Congress' intent to make concealing or harboring unauthorized aliens a crime, but the penalty for the offense was unclear. *See id.* at 485, 68 S.Ct. 634. The Court acknowledged that, "where Congress has exhibited clearly the purpose to proscribe conduct within its power to make criminal, ... every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose." *Id.* at 486, 68 S.Ct. 634. Nonetheless, the Court rejected the government's request to decide for itself the penalty Congress would have imposed, reasoning that "there are limits beyond which we cannot go in finding what Congress has not put into so many words or in making certain what it has left undefined or too vague for reasonable assurance of its meaning." *Id.*

By contrast, here, where Congress' intent to have drug quantity decided by the judge at sentencing *is* clear from the statute's structure and legislative history, as the government has conceded, the majority takes the statute's silence as a license to superimpose on the statute a requirement *contrary* to clear congressional intent. *See* Maj. op. at 568 (stating that drug quantity must now be submitted to a jury and proven beyond a reasonable doubt). Similar to *Evans*, where Congress failed numerous times to address the ambiguity in the statute at issue, during the many years that the courts universally interpreted § 841(b) as encompassing sentencing considerations to be determined by the judge by a preponderance of the evidence, Congress never enacted legislation to correct that perception. *Cf. United States v. Kelly*, 105 F.Supp.2d 1107, 1115 (S.D.Cal. 2000) (noting that, "[d]espite the pervasiveness of this conviction [that § 841(b) is intended by Congress to set forth sentencing factors] among the federal courts, Congress has never amended the statute to provide otherwise. The only rational interpretation of congressional idleness in

---

**2.** Although Judge Hug, in his concurring and dissenting opinion, interprets *Castillo, Jones,* and *Almendarez–Torres* in the same way that I do, in applying that understanding to § 841, he, like the majority, completely ignores congressional intent. Instead, he attributes to Congress an intent which, although different from the intent ascribed to Congress by the majority, is equally, wholly unsupported by the legislative record—that Congress intended to define separate criminal offenses in enacting §§ 841(b)(1)(A) and 841(b)(1)(B).

the face of voluminous precedent that it has the power to set straight is to assume that Congress agrees.").

Congress made its intent clear by the statute's structure and legislative history. *See Nordby*, 225 F.3d at 1058 ("Congress ... clearly intended that drug quantity be a sentencing factor, not an element of the crime under § 841; the statute is not susceptible to a contrary interpretation."). Even if its intent were unclear, to conclude that, in light of *Apprendi*, Congress would have intended drug quantity to be an element of the offense "would be to proceed in an essentially legislative manner for the definition and specification of the criminal acts." *Evans*, 333 U.S. at 490–91, 68 S.Ct. 634.

> This is a task outside the bounds of judicial interpretation. It is better for Congress, and more in accord with its function, to revise the statute than for us to guess at the revision it would make. That task it can do with precision. We could do no more than make speculation law.

*Id.* at 495, 68 S.Ct. 634; *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 32–33, 3 L.Ed. 259 (1812) (holding that it is "[t]he legislative authority of the Union [that] must ... make an act a crime").

Ultimately, the solution of what a constitutional drug sentencing scheme should encompass is the prerogative of Congress. It is not the courts' function to jerry-build a sentencing scheme that Congress might or might not have intended, had it foreseen the collision between *Apprendi* and § 841(b)(1)(A) & (B). *See United States v. Jackson*, 390 U.S. 570, 576–78, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (rejecting the government's argument that 18 U.S.C. § 1201(a) authorized the convening of a special jury to decide whether to impose the death penalty because there was not "the slightest indication that Congress contemplated any such scheme. Not a word

in the legislative history so much as hint[ed]" that that was Congress' intent in enacting the statute); *United States v. Vazquez*, 271 F.3d 93, 113 (3d Cir.2001) (en banc) (Becker, C.J., concurring) ("It strains credulity, however, to assert that Congress intended for type and quantity to be treated as sentencing factors in some cases and as elements in others. I know of no statute written in such a manner, nor am I aware of any statutes construed this way.... Furthermore, ... we cannot assume that Congress might have adopted such an unusual approach simply to avoid an *Apprendi* violation.").

Finally, while "felicitous unanimity among" the courts of appeals may be a laudable goal, "conformity for its own sake is neither necessary nor desirable for the courts of appeals, because differences in opinion have the effect of ventilating important legal questions and creating a background against which the Supreme Court can ultimately resolve an issue for the country as a whole." *Walker v. O'Brien*, 216 F.3d 626, 634 (7th Cir.), *cert. denied sub nom. Hanks v. Finfrock*, 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 518 (2000). Justices O'Connor and Breyer foresaw that the majority's reasoning in *Apprendi* would render unconstitutional statutes such as § 841. *See Apprendi*, 530 U.S. at 544, 120 S.Ct. 2348 (O'Connor, J., dissenting) (stating that the consequences of the majority's rule "in terms of sentencing schemes invalidated by today's decision will likely be severe"); *id.* at 550–51, 120 S.Ct. 2348 (recognizing that the majority's reasoning "strongly suggests" that determinate-sentencing schemes are unconstitutional); *id.* at 565, 120 S.Ct. 2348 (Breyer, J., dissenting) (stating that "the majority's rule creates serious uncertainty about the constitutionality of" statutes such as § 841).

The majority has "end[ed] our status as an outlier," *Walker*, 216 F.3d at 634, but at

the price of ignoring congressional intent that every circuit has acknowledged to be clear and ignoring basic tenets of statutory construction recently applied by the Supreme Court in *Castillo, Jones,* and *Almendarez–Torres.* "It is one thing to fill a minor gap in a statute—to extrapolate from its general design to details that were inadvertently omitted. It is quite another thing to" construe the statute in a manner clearly contrary to congressional intent "for the sole purpose of rescuing a statute from a charge of unconstitutionality." *Jackson,* 390 U.S. at 580, 88 S.Ct. 1209. "[T]here are limits beyond which we cannot go" in statutory construction. *Evans,* 333 U.S. at 486, 68 S.Ct. 634. Because the majority has clearly passed those limits, I respectfully dissent.